IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

CITY OF DANIA BEACH POLICE & FIREFIGHTERS' RETIREMENT SYSTEM,
Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

QWEST COMMUNICATIONS INTERNATIONAL,
CENTURYTEL, INC.,
EDWARD A. MUELLER,
CHARLES L. BIGGS,
K. DANE BROOKSHER,
PETER S. HELLMAN,
R. DAVID HOOVER,
PATRICK J. MARTIN,
CAROLINE MATTHEWS,
WAYNE W. MURDY,
JAN L. MURLEY,
MICHAEL J. ROBERTS,
JAMES A. UNRUH and
ANTHONY WELTERS,

    Defendants.

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff alleges upon knowledge as to its own acts and upon information and belief as to all other matters, as follows:

## SUMMARY OF THE ACTION

1. This is a stockholder class action brought by plaintiff, individually and on behalf of the public shareholders of Qwest Communications International Inc. ("Qwest" or the "Company") against Qwest, the directors of Qwest, and CenturyTel, Inc. ("CenturyTel"), arising out of their agreement to sell Qwest to CenturyTel via an unfair process (the "Proposed Transaction"). In pursuing the Proposed Transaction, each of the defendants has violated applicable law by directly breaching and/or aiding breaches of fiduciary duties of loyalty and due care owed to plaintiff and the proposed class.

2. Under the terms of the Proposed Transaction, CenturyTel will acquire all of Qwest's outstanding shares of common stock for approximately $10.6 billion, after which Qwest will merge into a CenturyTel controlled entity. The Proposed Transaction has been approved by Qwest's Board of Directors (the "Board"). Each Qwest shareholder is to receive 0.1664 CenturyTel shares for each Qwest share, worth approximately $6.02 per Qwest share (the "Offer Price"). The Offer Price represents a premium of just 15% on the trading price of Qwest stock prior to the announcement of the Proposed Transaction.

3. The Proposed Transaction is the product of a flawed process that is designed to ensure the sale of Qwest to CenturyTel on terms preferential to certain Qwest directors and CenturyTel but detrimental to plaintiff and the other public stockholders of Qwest. Plaintiff seeks to enjoin the Proposed Transaction, or alternatively, in the event the Proposed Transaction is

consummated, plaintiff seeks to recover damages caused by the breaches of fiduciary duties owed to the Company's shareholders.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court also has jurisdiction over this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based upon the statutory or common law of Delaware, Qwest's state of incorporation, and thus may be maintained in federal court. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391 because nominal defendant Qwest has its principle place of business in this District. Plaintiff's claims arose in this District, where most of the actionable conduct took place, where most of the documents are electronically stored and where the evidence exists, and where virtually all the witnesses are located and available to testify at the jury trial permitted on these claims in this Court. Moreover, each of the Individual Defendants, as Company officers and/or directors, has extensive contacts with this District.

## PARTIES

6. Plaintiff City of Dania Beach Police & Firefighters' Retirement System is, and has been at all times relevant hereto, a Qwest shareholder.

7. Qwest is a Delaware corporation, headquartered at 1801 California Street, Denver, Colorado 80202. Qwest is and at all times relevant hereto was listed and traded on the New York

Stock Exchange under the symbol "Q." The Company specializes in the service of a range of telecommunications services throughout the United States.

8. Defendant CenturyTel is a telecommunications company located in Monroe, Louisiana. Defendant CenturyTel is a publicly traded company with securities trading on the New York Stock Exchange under the symbol "CTL."

9. Defendant Edward A. Mueller ("Mueller") is a Qwest director and has been a director since 2007. Defendant Mueller also serves as the Company's Chairman of the Board and Chief Executive Officer.

10. Defendant Charles L. Biggs ("Biggs") is a Qwest director and has been a director since 2004.

11. Defendant K. Dane Brooksher ("Brooksher") is a Qwest director and has been a director since 2004.

12. Defendant Peter S. Hellman ("Hellman") is a Qwest director and has been a director since 2000.

13. Defendant R. David Hoover ("Hoover") is a Qwest director and has been a director since 2005.

14. Defendant Patrick J. Martin ("Martin") is a Qwest director and has been a director since 2005.

15. Defendant Caroline Matthews ("Matthews") is a Qwest director and has been a director since 2005.

16. Defendant Wayne W. Murdy ("Murdy") is a Qwest director and has been a director since 2005.

17. Defendant Jan L. Murley ("Murley") is a Qwest director and has been a director since 2007.

18. Defendant Michael J. Roberts ("Roberts") is a Qwest director and has been a director since 2009.

19. Defendant James A. Unruh ("Unruh") is a Qwest director and has been a director since 2005.

20. Defendant Anthony Welters ("Welters") is a Qwest director and has been a director since 2006.

21. The defendants identified in ¶¶9-20 are at times collectively referred to as the "Individual Defendants."

22. The Individual Defendants, as officers and directors of the Company, owe fiduciary duties to the public shareholders. As alleged herein, they have breached their fiduciary duties by failing to maximize shareholder value in a proposed sale of the Company.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action individually and as a class action pursuant to Colorado Rule of Civil Procedure 23, on behalf of all holders of Qwest stock who are being and will be harmed by defendants' actions described herein (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. Qwest has outstanding approximately 1.73 billion shares owned by thousands of shareholders.

- 4 -

26. There are questions of law and fact which are common to the Class, including, *inter alia*, the following:

(a) whether the Individual Defendants have breached their fiduciary duties of undivided loyalty and due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(b) whether the Individual Defendants have erected barriers designed to deter interested bidders, other than CenturyTel;

(c) whether the Individual Defendants have disclosed to the Company's public shareholders all material information necessary for said shareholders to make a decision as to whether to vote their shares in support of the Proposed Transaction; and

(d) whether plaintiff and the other members of the Class will be irreparably harmed if the transactions complained of herein are consummated.

27. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

28. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the Class.

30. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

31. Despite recent difficulties caused by the global recession, the short-term and long-term prospects for Qwest's services and finances are favorable. Qwest has stated as much in recent releases. On October 28, 2009, Qwest issued a press release reporting the Company's financial results for the third quarter 2009. In the October 28, 2009 press release, the Company reported net income of $136 million, and earnings per share of $0.08, equal to the previous year. Defendant Mueller was quoted in the October 28, 2009 press release as saying:

> Our focus on perfecting the customer experience while maintaining strong financial discipline again enabled us to deliver solid results in the quarter . . . . The ability of the Qwest team to steer through difficult market conditions has been exemplary. This is evident in key measures of our performance including strategic revenue growth, reduced operating expenses, stable EBITDA, strong free cash flow and an improving leverage ratio. As a result of our stronger-than-expected performance to date, *we are raising our full year 2009 free cash flow outlook*. We are optimistic about our prospects as the economy begins to improve in the quarters ahead.

32. On January 6, 2010, Qwest filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") announcing that the Company expected its full-year EBITDA will be near the upper end of its guidance of $4.25 billion to $4.4 billion, and that its full-year adjusted free cash flow will exceed the upper end of its guidance of $1.6 billion to $1.7 billion.

33. On February 16, 2010, Qwest issued a press release announcing the Company's financial results for the fourth quarter and full year 2009, which included net income in the fourth quarter of $108 million, and an increase in full year 2009 earnings per share to $0.38. The financial

results were described in the February 16, 2010 press release as "solid growth in business and consumer data services, [and Qwest] continued to produce strong cash flows and made significant progress on key initiatives." In the same press release, defendant Mueller was quoted as saying:

> In the quarter, we continued to create innovative approaches to drive efficiency and perfect the customer experience . . . Throughout 2009, the Qwest team stood up to the challenges of a tough economy and highly competitive markets to deliver value for our shareholders. In particular, we did an excellent job of generating cash flows and strengthening the balance sheet. In 2010, our goal is to continue to excel in these areas while adding improved revenue performance to our list of achievements. ***We continue to be optimistic about our prospects in the coming year.***

34. The positive financial results of the Company, as reported by Qwest in recent press releases and SEC filings, make the decision to sell the Company to CenturyTel at the Offer Price all the more shocking.

35. On April 22, 2010, the Company announced the Proposed Transaction in a press release. The April 22, 2010 press release stated in pertinent part:

> CenturyLink and Qwest Communications announced today that their boards of directors have approved a definitive agreement under which CenturyLink will acquire Qwest in a tax-free, stock-for-stock transaction. Under the terms of the agreement, Qwest shareholders will receive 0.1664 CenturyLink shares for each share of Qwest common stock they own at closing. Upon closing of the transaction, CenturyLink shareholders are expected to own approximately 50.5 percent and Qwest shareholders are expected to own approximately 49.5 percent of the combined company.
>
> Based on the closing stock price of CenturyLink on April 21, 2010, the per share consideration to be received by Qwest shareholders would be equivalent to $6.02 of CenturyLink stock, which represents a premium to Qwest shareholders of approximately 15 percent over Qwest's closing stock price on April 21, 2010. Based on the closing stock price of CenturyLink on April 21, 2010, the transaction reflects an enterprise value of Qwest of approximately $22.4 billion, including the assumption of $11.8 billion of Qwest net debt outstanding as of December 31, 2009.
>
> The parties expect the transaction to be accretive to CenturyLink's free cash flow per share, excluding integration costs, immediately following the close of the

transaction. Leveraging CenturyLink's proven integration experience, the transaction is expected to generate annual operating and capital synergies of approximately $625 million when fully recognized over a three- to five-year period following the close of the transaction.

36.    The timing of the Proposed Transaction has been engineered to take advantage of a recent decline in the trading price of Qwest's shares caused by the nationwide recession, and if consummated will likely result in Qwest's shareholders losing the value of their investment in Qwest. Qwest has yet to disclose material information concerning the Offer Price in SEC filings related to the Proposed Transaction, nevertheless, it is likely the Offer Price reflects an inadequate premium to the trading price of the Company's common stock prior to the announcement of the Proposed Transaction, given that Qwest has promising finances and products.

37.    Moreover, the Proposed Transaction appears to undervalue Qwest's immediate and long-term prospects as a provider of landline DSL Internet services to rural communities without broadband cable Internet access or fiber-optic transmission lines, and the value of those prospects to CenturyTel. Notably, CenturyTel has stated that it expects to reap $575 million in annual cost synergies, and expects to generate even greater revenue synergies as it moves quickly to update Qwest's landlines to handle DSL Internet. In addition, Qwest has $5.8 billion in Net Operating Losses ("NOLs") with a net present value of at least $1.7 billion. As currently constituted, the Proposed Transaction is not priced to compensate Qwest shareholders for these synergies or Qwest's NOLs.

38.    The announcement of the Proposed Transaction also revealed that four Qwest directors, including defendant Mueller, would be appointed to positions at CenturyTel, creating a clear conflict of interest for those directors who have a duty to act in the best interests of the Company's shareholders, not themselves.

39.     Furthermore, and in violation of the duty of the Individual Defendants to maximize shareholder value, the agreement between defendants to sell Qwest to CenturyTel (the "Merger Agreement") contains terms designed to favor the Proposed Transaction and deter alternative bids. The improper terms of the Merger Agreement include the following:

(a)     a non-solicitation clause prohibiting Qwest from seeking a third-party bid that might maximize shareholder value;

(b)     a clause providing that the details of any unsolicited but favorable bid for Qwest must be transmitted to CenturyTel prior to any public announcement thereof, effectively permitting CenturyTel to match the alternative bid and thereby deter the likelihood of the alternative bid being made; and

(c)     an improper $350,000,000 termination fee in the event of certain circumstances resulting in Qwest accepting a superior bid for the Company.

40.     Unless enjoined by this Court, the defendants will continue to breach and/or aid the breaches of fiduciary duties owed to plaintiff and the Class, and may consummate the Proposed Transaction which will deprive Class members of their fair share of Qwest's valuable assets and businesses, to the irreparable harm of the Class.

41.     Plaintiff and the other members of the Class have no adequate remedy at law.

## COUNT I

### Claim for Breaches of Fiduciary Duties
### Against the Individual Defendants

42.     Plaintiff repeats and re-alleges each allegation set forth herein.

43.     The Individual Defendants have violated their fiduciary duties of care and loyalty owed to the public shareholders of Qwest. By the acts, transactions and courses of conduct alleged

herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in Qwest.

44.     As demonstrated by the allegations above, the Individual Defendants have failed to exercise the care required, and breached their duties of loyalty because, among other reasons:

(a)     they have failed to properly value the Company;

(b)     they have failed to take steps to maximize the value of Qwest to its public shareholders; and

(c)     they have agreed to terms in the Merger Agreement that favor CenturyTel and themselves, and deter alternative bids.

45.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the other members of the Class, and may consummate the Proposed Transaction which will deprive the Class of its fair proportionate share of Qwest's valuable assets and businesses, to the irreparable harm of the Class.

46.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

## COUNT II

### Claim for Aiding and Abetting Breaches of Fiduciary Duties
### Against CenturyTel and Qwest

47.     Plaintiff repeats and re-alleges each allegation set forth herein.

48. Defendant CenturyTel, by reason of its status as a party to the Proposed Transaction and its possession of non-public information, has aided and abetted the Individual Defendants in the aforesaid breach of their fiduciary duties.

49. Such breaches of fiduciary duties could not and would not have occurred but for the conduct of defendant CenturyTel, who therefore aided and abetted such breaches in the sale of Qwest to CenturyTel.

50. Defendant Qwest, by reason of its status as a party to the Proposed Transaction and its possession of non-public information, has aided and abetted the Individual Defendants in the aforesaid breach of their fiduciary duties.

51. Such breaches of fiduciary duties could not and would not have occurred but for the conduct of defendant Qwest, who therefore aided and abetted such breaches in the sale of Qwest to CenturyTel.

52. As a result of the unlawful actions of defendants CenturyTel and Qwest, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive fair value for Qwest's assets and business. Unless the actions of defendants CenturyTel and Qwest are enjoined by the Court, defendants CenturyTel and Qwest will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to plaintiff and the members of the Class.

53. Plaintiff and the Class have no adequate remedy of law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands relief, in plaintiff's favor and in favor of the Class and against defendants, as follows:

A. Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

B. Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, including the "no solicitation" clause;

D. Enjoining defendants from consummating the Merger Agreement and Proposed Transaction unless and until curative disclosures are made to Qwest's shareholders;

E. Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


DATED: May 5, 2010                               Respectfully Submitted,


                                                 *s/ Kip B. Shuman*
                                                 Kip B. Shuman
                                                 Rusty E. Glenn
                                                 **THE SHUMAN LAW FIRM**
                                                 885 Arapahoe Avenue
                                                 Boulder, CO  80302

Telephone: 303/861-3003
303/484-4886 (fax)
kip@shumanlawfirm.com
rusty@shumanlawfirm.com

*Liaison Counsel for Plaintiff*

**ROBBINS GELLER RUDMAN
 & DOWD LLP**
Darren J. Robbins
Michael J. Dowd
Randall J. Baron
David T. Wissbroecker
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

**SUGARMAN & SUSSKIND**
Robert Sugarman
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
Telephone: 305/529-2801
305/447-8115 (fax)

*Counsel for Plaintiff*

- 13 -